STATE v. JOAB SCALES ET AL., EXECUTORS, ETC.

(Filed 9 November, 1916.)

**1. Taxation—Inheritance Tax—Interpretation.**

Our inheritance tax laws should be liberally construed to the end that all property coming within their provisions may fairly and reasonably be taxed, keeping in view the history of this legislation and the statutory amendments made from time to time.

**2. Same—"Section."**

Our statutes passed upon the subject of inheritance tax are construed as showing an advancing tendency to include all property, to decrease exemptions, and to maintain a distinct classification of persons, placing the lineal descendant, the lineal ancestor, husband and wife in the most favored class, and the stranger and the corporation in the class subject to the highest tax; and construing the act of 1913, applying the exemptions only to those in the first class, with the act of 1915, reducing the classifications from five to three, and allowing an exemption of $2,000 to "all other beneficiaries in this section": *Held,* the word "section" was intended and meant for the subdivision in which it was placed, and does not apply to the whole section to exempt strangers of the blood of the testator along with the beneficiaries of the first class.

**3. Same—Intent.**

The inheritance tax law, in grading the widow and blood relations, etc., of the deceased into one classification, exempting property to the value of "$2,000 to a child over 21," and permitting but one exemption to grandchildren of one child of the deceased, etc., cannot rationally be construed, by the additional words to this classification, "all other beneficiaries in this section, $2,000," to apply to the second and third classification, so as to give this exemption to strangers of the testator's blood, who take under his will.

CIVIL ACTION tried before *Long, J.,* at September Term, 1916, of FORSYTH.

This is an action to recover an amount alleged to be due as an inheritance tax from the estate of James S. Scales, who died leaving a will in which there are certain devises and legacies.

The material facts agreed to by the parties are as follows:

"3. That the assessed value of the real and personal estate of the testator, James S. Scales, has by the proper and legal authorities been ascertained to be $162,969, which amount embraces the amount received on specific legacies and the residuary legatees as set out in paragraph 4 of the complaint, to wit:

"To J. A. Scales, trustee of Sarah Elizabeth Scales, sister, her life interest in legacy of $10,000, equal to $1,503. To J. A. Scales, trustee

of Peter Nathan Scales, brother, his life interest in a legacy of $10,000, equal to $3,069. To Peter Nathan Scales, brother in his own right, $10,000. Susan A. Scales, trustee of Joseph Temple Crews, cousin, a legacy of $2,000. H. H. Riddle, stranger in blood, legacy of $2,000. J. K. Norfleet, stranger in blood, legacy of $2,000. George S. Norfleet, stranger in blood, legacy of $1,000. Charles M. Norfleet, stranger in blood, legacy of $500. To Mary Llewellyn, cousin, legacy of $500; Mit Taylor, cousin, legacy of $500; John L. Shelton, cousin, legacy of $500, making a total of specific legacies paid by said executors of $23,572.

"Residuary legatees received $139,497, divided as follows: Under section 13 of the will: Susan A. Scales, sister, one-third, $46,499; Joab Scales, brother, a one-third, $46,499; to W. A. Shelton, nephew, one-sixth, $23,249.50; to Clara Stephens, niece, one-sixth, 23,249.50.

"4. That the defendant executors have paid to the State of North Carolina as inheritance tax the sum of $4,666.93; the plaintiff, the State of North Carolina, claims a balance of $765, the same being the full amount of inheritance tax claimed as due upon the specific legacies and the residuary legatees.

"5. The defendants contend that under chapter 285 of the Public Laws of 1915, inheritance tax schedule AA, Section 6, that each legatee, specific and residuary, is entitled to an exemption of $2,000, and that therefore he does not owe the State of North Carolina any further inheritance tax.

"6. The defendants further contend that under the Revenue Law, Chapter 285, Public Laws of 1915, that each and every one of the legatees, whether special or residuary legatee, is entitled to an exemption of $2,000.

"7. The plaintiff, the State of North Carolina, contends that there is no exemption upon any one of the legacies, special or residuary, and therefore the estate of James S. Scales is due to the State of North Carolina, on inheritance tax under the property as assessed, the sum of $765."

His Honor held that all legatees, special, general, and residuary, were entitled to an exemption of $2,000 each, and rendered judgment in favor of the defendants, and the plaintiff excepted and appealed.

C. A. Vogler for plaintiff.
Jones & Clement for defendants.

ALLEN, J. The origin and history of the inheritance tax are given in the case of In re Morris, 138 N. C., 259, and in construing statutes upon this subject of taxation we have followed the rule of the New

York courts of a liberal construction to the end of taxing all property fairly and reasonably coming within their provisions. *Norris v. Durfey.* 168 N. C., 323. There were inheritance tax laws in this State as early as 1847, but the first of the present system was adopted in 1901, and at each session of the General Assembly since then it has been retained as a part of our scheme of taxation.

At first only personal property was subject to the tax, but in 1905 the General Assembly declared its purpose to include real property, and while under the acts of 1905, 1907, and 1909 the question was raised as to whether the machinery had been provided for taxing real property, this was put beyond question in the act of 1911 by provision, which is retained in the acts of 1913 and 1915.

In the original act and down to the act of 1913 the section of the Revenue Act devoted to this subject stated what property should be subject to the tax, and then provided that the tax on the excess of $2,000 should be levied as follows, thereby giving an exemption from taxation of property of the value of $2,000 to all legatees and devisees (*S. v. Bridges,* 161 N. C., 258), and then followed in all of the acts from 1901 to 1911, inclusive, five subdivisions of the section, classifying the persons taking the estate by inheritance or by purchase and fixing the rate on each class.

In these acts devises and bequests to husband and wife and to religious, charitable, and educational institutions were exempt from tax, and in the first class subject to the tax were lineal issue, lineal ancestor, brothers and sisters, and one standing in the relation of child, who were taxed 75 cents on property of the value of $100, while in the fifth class were strangers and corporations, who were taxed on the excess over $2,000 and up to $5,000 at the rate of $5 on each $100 of property, and at a higher rate in excess of $5,000.

In 1913 the General Assembly struck out the clause preceding the classification, providing that the tax should only be on the excess over $2,000; also the provision exempting husband and wife and religious, charitable, and educational institutions from the tax, removed brother and sister from the first class to the second class, in which the rate was $3, and placed husband and wife in the first class, in which the rate was raised to $1.

It also increased the rate in class five on strangers and corporations from $5 to $10 and omitted the provision theretofore in this classification allowing the tax only on property in excess of $2,000.

In the first class, after enumerating those in the class—lineal issue, lineal ancestor, husband, wife, and one standing in the relation of child—there is the following provision:

"The persons mentioned in this class, except as is hereinafter otherwise provided, shall be entitled to an exemption of $2,000 each: *Provided,* grandchildren shall be allowed only the single exemption of the child they represent: *Provided,* a widow shall be entitled to an exemption of $10,000 and each child under 21 years of age to an exemption of $5,000."

In the act of 1915 the classification was reduced from five to three, a graduated tax proportioned to the value of the property was adopted, the persons in the first class remaining as in the act of 1913, except "adopted child" was substituted for "person in relation of child," and strangers and corporations were placed in the third class.

The rate was increased on those in the first class when the property exceeded $25,000 in value, and was decreased on those in the third class.

After stating the rates applicable to the first class, there is this provision in this subdivision of the section: "The persons mentioned in this class shall be entitled to the following exemptions: Widows, $10,000; each child under 21 years of age, $5,000; all other beneficiaries mentioned in this section, $2,000 each: *Provided,* grandchildren shall be allowed the single exemption of the child they represent"; and after the rates in subdivision three the following: *"Provided,* that no tax shall be imposed or collected under this section," etc.

This statement of legislation upon the subject in this State shows an advancing tendency to include all property, to decrease exemptions, and to maintain a distinct classification of persons, the lineal descendant, lineal ancestor, husband and wife, being in the most favored class, and the stranger and the corporation in the class subject to the highest tax.

It also clearly appears that up to 1913 it was the policy of the State to allow an exemption of $2,000 to persons and corporations in all classes, as only property in excess of $2,000 was subejct to the tax, and that this policy was changed in the act of 1913 and the exemptions provided only applied to those in the first class.

The act of 1915 manifests a purpose to continue the policy declared in the act of 1913, as it omits the provision, preceding the classification, limiting the tax to property in excess of $2,000, and the exemptions have the same placing in the first class.

It was, however, necessary to change the phraseology of the act, as a graduated tax was adopted and the five classifications were reduced to three.

It is bcause of this change in language and on account of the use of the words in the first class in stating the exemptions, "all other beneficiaries in this *section,* $2,000," that the defendants contend that by proper construction the act of 1915 gives an exemption of $10,000

to widows, $5,000 to each child under 21, and that the husband, the child over 21, the grandfather, grandmother, the brother, sister, the remotest kinsman, the stranger and the corporation are classified together, and are alike subject to the exemption of $2,000.

This construction would lead to unnatural and irrational consequences, and "It is presumed that the Leislature does not intend an absurdity, or that absurd consequences shall flow from its enactments. Such a result will, therefore, be avoided, if the terms of the act admit of it, by a reasonable construction of the statute. By an absurdity, as the term is here used, is meant anything which is so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of men of ordinary intelligence and discretion. The presumption against absurd consequences of legislation is, therefore, no more than the presumption that the legislators are gifted with ordinary good sense." Black on Interpretation of Laws, page 104.

The widow and the children under 21, named in the exemptions, are persons to whom the deceased owner of the property owed the legal duty of support, and as between these the act gives the widow $10,000 and the child $5,000, and the child over 21 has only an exemption of $2,000.

With this spirit manifested in the act to graduate the exemption according to dependency and relationship, is it reasonable to conclude that the General Assembly intended to place the child over 21, who is in the first class as to rate, with the stranger and the corporation in the third class as to exemption, and to say that each should have the same exemption of $2,000?

Again, it is provided in the first subdivision that "Grandchildren shall be allowed the single exemption of the child they represent," and under the construction for which the defendants contend, if a decedent died testate, leaving an estate of $20,000, which amount was to be divided among his five grandchildren, who were the heirs of an only son, and five of his friends, who were strangers in blood, each legatee to receive a legacy of $2,000; the grandchildren collectively would only be allowed an exemption of $2,000, and would have to pay inheritance tax on the remaining $8,000, *while the stranger in blood would have to pay no tax at all,* as the grandchildren together would only be entitled to the exemption of their father or mother, $2,000, and each stranger would have an exemption of $2,000.

We cannot think the Legislature intended such results, and that the word "section" in the phrase, "All other beneficiaries in this section," refers to the first subdivision of the section, and not to the whole section.

Immediately after the levy of the graduated taxes in the first classification, the act says: "The persons mentioned in *this class* shall be

entitled to the following exemptions," thereby declaring that lineal issue, lineal ancestor, adopted child, husband and wife, who are the persons mentioned in the first class, shall have the exemption, and that brothers and sisters, who are in the second class, and remote kinsmen, strangers, and corporations, who are in the third class, shall be excluded from the exemption.

Again, in the third classification in the act of 1915 the word "section" is used in such connection as to indicate clearly that it is confined to that subdivision, thus furnishing additional evidence that the General Assembly was referring to the subdivisions in the use of the word.

This is not a strained construction, as both Webster and the Century define section to be a division, a portion, a paragraph, and Cyc., 35, p. 1282, "A distinct part or portion; the subdivision of a chapter; the division of a law or other writing or instrument; a part separate from the rest; a division; a portion; a distinct part or portion of a book or writing; the subdivision of a chapter, the division of law or other writing; a paragraph," which would justify applying it to the whole section or to a subdivision, and it has been held to refer to a subdivision of a section in *Carter v. Barnes,* 87 S. C., 105; *In re Dossler,* 35 Kan., 683; *Spring v. Collector,* 78 Ill., 105.

We are of opinion that the estate is liable for the tax, as the plaintiff contends.

Reversed.